## I. P. FRINK, Inc., v. ERICKSON.

(District Court, Massachusetts. January 23, 1923.)

No. 1663.

1. **Patents 328—Patent 1,007,498, for electric illuminating device, held invalid, and not infringed, if valid.**

Patent No. 1,007,498, for electric illuminating device, *held* invalid for lack of invention, and not infringed, even if valid.

2. **Patents 177—Patent for invention, combining old elements, if valid, must be strictly construed.**

Patent for invention, combining old elements, if valid, must be strictly construed, and there is little or no room for doctrine of equivalents.

3. **Torts 10—Patentee held liable for damages for false reports of issuance of temporary injunction.**

Defendant, in patent infringement suit, *held* entitled to recover on its counterclaim for damages resulting from false reports of issuance of temporary injunction, sustaining plaintiff's patent, for circulation of which plaintiff was responsible.

4. **Patents 112(3)—That patent is issued makes out prima facie case of exclusive right thereto.**

That patent is issued makes out prima facie case of exclusive right thereto, no matter how flimsy claim of patent monopoly may be.

In Equity. Patent infringement suit by I. P. Frink, Inc., against Leonard Erickson. Decree for defendant.

James R. Hodder, of Boston, Mass., and Dodson & Roe, of New York City, for plaintiff.

George K. Woodworth, of Boston, Mass., for defendant.

ANDERSON, Circuit Judge. The plaintiff and defendant are competitors in the business of selling and installing electric illuminating fixtures and devices. This is a patent infringement case, with an added allegation of unfair competition. The latter allegation is entirely unsupported by evidence, and calls for no discussion.

The defenses are invalidity and noninfringement. There is also a counterclaim of unfair competition, based on threats, known to be groundless, and false statements as to preliminary injunction sustaining plaintiff's patent, directed by the plaintiff against the defendant's customers.

[1] 1. As to invalidity: The patent, No. 1,-007,498, dated October 31, 1911, contains a single claim as follows:

"An illuminating device comprising a cornice casing provided with a longitudinally extending opening in the bottom thereof, a reflector shell extending longitudinally within the interior of said cornice casing, reflector members supported by said reflector shell, a plurality of lamps or lighting units supported beneath said reflector shell and its reflector members, and a light-softening and diffusing screen pivotally supported across said longitudinally extending opening in the bottom of said cornice casing, substantially as and for the purposes set forth."

The device is nothing but a rectangular box or cornice, with electric lights and reflectors inside, and ground glass in the lower side, intended to throw softened and diffused light upon the counters in a bank.

Turning to the file wrapper, we find that the original application, dated December 27, 1910, included 16 elaborate claims. The examiner rejected all of these claims, on various patents cited, except that, finding no previous combination of such familiar elements in which the light-softening screen was pivotally supported, the above single claim was allowed. Everything else was abandoned. If "pivotally" had been struck out, as the application proposed, the examiner would have rejected the claim on Clark & Eck cited patents. Yale Lock Co. v. Berkshire Bank, 135 U. S. 342, 379, 10 S. Ct. 884, 34 L. Ed. 168.

In all such closed lighting devices it is necessary to furnish means of access to the light. Whether such means be provided by a hinged door on any side, or by a sliding panel, or by a panel conveniently attached by means of screws or buttons, involves merely mechanical skill. It is plain, and I so find and rule, that to hinge the side of the cornice that contains the diffusing screen involves no invention. The case seems to be too plain to call for discussion. The patent is wholly invalid.

The plaintiff adduced in support of this obvious aggregation of familiar elements a learned expert, who gave evidence, interesting, but mainly if not entirely, irrelevant. There is nothing in the specification or in the single claim indicating that the plaintiff had

16 F.(2d)—32

solved, much less had shown others how to solve, the abstruse and highly scientific problems concerning which this expert testified. The patent does not even contain directions for arranging the reflecting elements in such manner or at such angles as properly to reflect the light in the desired directions. In fact, the angles shown in drawings 4 and 5 of the patent are substantially different.

[2] 2. A word as to infringement: Manifestly, with such a history in the Patent Office, the patent, if otherwise valid, must be strictly construed. There is little or no room for the doctrine of equivalents. Liberty v. Champion-Int. Co. (C. C. A.) 175 F. 780; Emerson v. Simpson (C. C. A.) 202 F. 747, 752. The defendant's reflecting devices are substantially different from those of the patent, and, on the evidence in the case, inferior to the plaintiff's reflecting devices. The plaintiff's reflectors consist of two elements; the defendant's, of only one. There are other differences, which call for no detailed description. Infringement is not shown, even if the patent were valid.

[3] 3. The defendant's counterclaim must be sustained. It is proved that on or about November 15, 1921, false reports as to the issuance of a temporary injunction sustaining the plaintiff's patent were circulated, that for these reports the plaintiff must be held responsible, and that they almost certainly did the defendant damage; to what extent cannot, on the present record, be determined. Asbestos Co. v. Johns-Manville Co. (C. C.) 189 F. 611, 615; Atlas Co. v. Cooper Co. (D. C.) 210 F. 347; Bonnie-B Co. v. Giguet et al. (D. C.) 269 F. 272.

The statement in the letter of Architect Bosson, which reached the electrical contractor for the Columbia Trust Building, for the installation in which defendant had an order for $1,150 of his goods, plainly originated with the plaintiff; it falsely stated that a temporary injunction had been issued, covering defendant's reflectors. It was the proximate cause of the cancellation of this contract. It also discouraged defendant's New York agent from figuring on other jobs. It was a typical case of unfair competition by the use of false statements as to patent rights.

[4] 4. I am not prepared to support defendant's broad claim that the plaintiff knew its patent was invalid, and by threats of infringement suits, known to be groundless, prevented defendant from getting business. However flimsy the claim of patent monopoly may seem to be, the patent had issued; it made a prima facie claim of exclusive right. True, there is some evidence that its scope was some-

what exaggerated in the statements made by plaintiff's agents. But accuracy, either of knowledge or of expression, can hardly be expected. No case cited goes quite as far as the defendant asks this court to go on this point.

5. The result is that the plaintiff's bill for infringement must be dismissed, with costs; the counterclaim must be sustained, and the temporary injunction as to other infringement suits, issued on the supplemental answer, must be made permanent.

Decree accordingly.